UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EDSON TORO

V. C. A. NO. 08-064 S

STATE OF RHODE ISLAND, ET AL

## A. T. WALL'S MOTION TO DISMISS

Now comes Defendant A. T. Wall, II, Director of the Rhode Island Department of Corrections, and hereby moves to dismiss the instant complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) as and for the reasons proffered in the accompanying Memorandum.

DEFENDANTS,
By his Attorney,

/S/ Michael B. Grant

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920

## CERTIFICATION

The undersigned hereby certifies that on this, the 7th day of April, 2008, I mailed a true copy of the within A. T. Wall's Motion to Dismiss and accompanying Memorandum to Edson Toro, P. O. Box 8200, Cranston, R. I. 02920.

/S/ Michael B. Grant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EDSON TORO

V. C. A. NO. 08-064 S

STATE OF RHODE ISLAND, ET AL

MEMORANDUM

Plaintiff, a Rhode island Penal inmate who is appearing Pro Se, has brought the instant action pursuant to 42 U.S.C. § 1983 against the State of Rhode Island, the Rhode Island Superior Court, A. T. Wall, II, Director of the Rhode Island Department of Corrections and Jane and John Doe Defendants.

Plaintiff alleges that on July 14, 1994, in Case No. P2-93-0837 A, he was convicted of a crime resulting from a trial in the Superior Court. Judge John Sheehan presided over the trial; that Judge Sheehan unlawfully refused to allow Plaintiff to put forth affirmative defenses and gave incorrect jury instructions; that Judge Sheehan sentenced Plaintiff to serve fifteen (15) years, ten (10) years to serve, five (5) years suspended with probation. Plaintiff's direct appeal to the Rhode Island Supreme Court was denied and dismissed on or about November 4, 1996. On or about September 27, 2002, the United States Court of Appeals for the First Circuit issued a decision directing this Honorable Court to review Plaintiff's case and make specific determinations relative to the Plaintiff's criminal case when it was pending in the Superior Court. The complaint alleges that on or about April 29, 2003, Presiding Justice Rodgers of the Superior Court entered an order vacating Plaintiff's judgment and conviction, in Case No. P2-93-0837 A, and that the Attorney General conceded a violation of the Plaintiff's Constitutional rights. Finally, Plaintiff alleges that on February 9, 2005, the Rhode Island Supreme Court in Case No. P2-1993-0837 A decided in his favor. Plaintiff filed the instant Section 1983 action on February 25, 2008.

## SUPERVISORY LIABILITY

A supervising person or entity cannot be held vicariously liable under 42 U.S.C. § 1983 on a respondeat superior theory. **Maldonado-Denis v. Castillo-Rodriguez**, 23 F.3d 576, 581 (1st. Cir. 1994). A supervisor may be liable under § 1983 only on the basis of his or her own acts or omissions. Id. A supervisor may be liable by establishing a policy or following a custom that leads to the challenged activity. Id. at 582. A superior may also be liable if he had actual knowledge of the wrongful activity, or if he would have had such knowledge but for his deliberate indifference to this activity, and he had the authority to require changes but did not do so. Id. A Successful Plaintiff must show that the superior was deliberately indifferent and that his conduct caused the subordinate's actions violative of the Plaintiff's constitutional rights. Id. This connection may be shown if the supervisor knew of, approved or intentionally ignored the conduct. Id. This connection may also be shown by past history of such conduct on a widespread basis known to the supervisor and sufficient to alert him to current problems. If he failed to implement necessary changes, he may be liable. Id. Isolated instances of unconstitutional activity are insufficient to show deliberate indifference. Id.

Plaintiff fails to articulate any factual averment demonstrating that Defendant Wall had any knowledge or notice of the facts involving the Plaintiff, and it is clear that Defendant Wall had no direct involvement with the Plaintiff’s trial or appeals. Accordingly, Plaintiff fails to allege any involvement by Wall or that he maintained the requisite culpable state of mind under the Eighth Amendment. The only allegation made against Defendant Wall found is found in Paragraph ¶ 3 under the portion of the complaint, entitled Statement of Claims, which indicates "Defendant Wall in his position as Director of the Rhode Island Department of Corrections had a duty to protect the Plaintiff and others of likelihood, including to make sure illegal incarcerated persons are not in his custody." Plaintiff however again fails to articulate any direct involvement by Wall relative to his incarceration or that he became aware of facts indicating Plaintiff’s

confinement was illegal. A supervisor, such as Director Wall, as indicated above, cannot be held vicariously liable under 42 U.S.C. § 1983; that a supervisor may only be held liable on the basis of his or her own acts or omissions. On the contrary, the factual allegations contained in the complaint are directed at the Attorney General and the Rhode Island court system. Clearly, Plaintiff has failed to state a claim against Director Wall under 42 U.S.C. § 1983 in the instant action. Therefore, Plaintiff's complaint should be dismissed. This Court is not required to credit Plaintiff's bare and conclusory assertion that Defendant Wall is responsible for Plaintiff being illegally incarcerated. **Acosta v. U.S. Marshals Service**, 445 F.3d 509, 514 (1st Cir. 2006).

## STATUTE OF LIMITATIONS

A state's personal injury statute of limitations applies in actions brought under 42 U.S.C. § 1983. See **Owen v. Okure**, 488 U.S. 235, 239, 109 S.Ct. 573, 576 (1989); **Wilson v. Garcia**, 471 U. S. 261, 279-80, 105 S.Ct. 1938, 1949 (1985); **Marapese v. Rhode Island**, 500 F.Supp. 1207 (D.R.I. 1980). Rhode Island's personal injury statute of limitations is three years. See R. I. Gen. Laws 9-1-14. Thus, a three-year statute of limitation applies to the Plaintiff's claims in this case. Here, Plaintiff's claims concern conduct that began on July 14, 1994 and continued until February 9, 2005 when the Supreme Court decided in the Plaintiff's favor, presumably, affirming the vacating of the Plaintiff's sentence. Plaintiff's complaint in this matter, pursuant to 42 U.S.C. § 1983, was filed and entered on this Court's docket on February 25, 2008. Accordingly, Plaintiff's claims, based on the conduct that occurred and is outlined in the complaint is time barred, and should be dismissed.

In conclusion, Defendants urge that the Plaintiff's complaint is completely silent as to any personal or direct involvement by Director Wall and the Plaintiff's claims are time barred by the applicable statute of limitations. The instant action should be dismissed.

Respectfully submitted,

/S/ Michael B. Grant

__________________________

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920

February 19, 2008

Susan J. Gardner
Senior Compliance Officer
Commission For Human Rights
180 Westminster Street
Providence, Rhode Island 02903

Re: Raymond Waite v. State of Rhode Island
RICHR # 07RTB229

Dear Ms. Gardner:

The instant correspondence shall serve as a response to your letter and inquiry dated January 24, 2008.

1. On what date did Mr. Waite meet with Ms. Debbie Mathieu, Chief Dietician, and expressed that he "had no outstanding issues" with his "renal diet" accommodation? Please submit a statement from Ms. Mathieu confirming that information.

RESPONSE: See attached memo from Ms. Mathieu.

2. Was Mr. Waite's request for an extra roll of toilet paper honored? If so, on what date did the accommodation begin?

RESPONSE: On February 11, 2008, the undersigned spoke with Correctional Officer Cunningham, who was posted in Mr. Waite's module. I asked Officer Cunningham if Mr. Waite had been given extra toilet paper because of his condition and the Officer did not know. While on the telephone with the Officer, Raymond Waite was summoned and the Officer inquired as to whether he received extra toilet paper. Mr. Waite indicated that he did not; however, I overheard the Officer telling Mr.Waite that he or any inmate can request extra toilet paper at any time, and his request would be granted in light of the fact that toilet paper is not contraband. Mr. Waite sounded to be satisfied and Officer Cunningham assured me that if Mr. Waite requests extra toilet paper, it would be granted.

3. Please submit copies of all letters written to Joe Marocco by the complainant and a statement from Mr. Marocco confirming when he became aware of Mr. Waite's accommodation request as well as what actions he took and/or directed others to take (and when) as a result of these requests.

RESPONSE: On February 12, 2007, Mr. Waite wrote to Joseph Marocco relative to furlough charges that were made for medical care that should be exempt from the same as a result of his chronic condition. On February 23, 2007, Mr. Marocco wrote back to Mr. Waite and affirmed that his dialysis treatments are exempt from the co-payment policy. Mr. Marocco also responded to the complainant's inquiry as to why he was denied medical parole, complainant's inquiry relative to the co-payment policy in general; responded to the Plaintiff's inquiry about toilet paper, that the complainant would have to request the same from Officers in his living area, not through his office, and also, Plaintiff's inquiry relative to emergency services being subject to a co-payment. Mr. Marocco also forwarded to the complainant for his review Department Policy No. 2.28.2, entitled "Medical Co-pay".

Complainant wrote to Joseph Marocco in a letter dated July 13, 2005 wherein he indicated he had been taken to the hospital three times a week for dialysis and that, he was being charged a co-pay in error. Mr. Marocco, on August 3, 2005 responded to the complainant in a memo dictating that any co-payments made by complainant for dialysis would be reversed. Mr. Marocco also indicated to the complainant in his memo that he would correspond with Inmate Accounts relative to the same for complainant's being reimbursed for all wrongful co-pays.

On April 5, 2006, Mr. Marocco responded to the complainant, who had sent him a copy of his Inmate Accounts ledger. Apparently, complainant had given the ledger to his inmate counselor, who in turn forwarded the ledger to one of Mr. Marocco's staff. Mr. Marocco, in his April 5, 2006 memorandum asked complainant. Mr. Marocco advised complainant and in the future the proper procedure for questioning ledger charges are to write to Inmate Accounts. Mr. Marocco also indicated that the base of service (apparently questioned by complainant) that complainant had been charged with the services were not the dialysis and listed five dates of when complainant received services.

On December 15, 2006, Joseph Marocco wrote to complainant relative to complainant's ledger that was given to one of Mr. Marocco's staff members. Mr. Marocco, in this memo, advises complainant relative to the co-payment policy that he should review his inmate account ledger monthly.

On December 14, 2006, Cathy Frappier, in the Health Care Services division wrote to Lucille Curran from Inmate Accounts a questioning letter complainant was overcharged for service on June 1, 2006.

On November 29, 2006, complainant wrote to Mr. Marocco wherein complainant indicates that he feels he is not being fully compensated for his employment and also, being wrongfully charged co-pays.

On December 13, 2006, Mr. Marocco, in a memo, responded to complainant indicating that any questions regarding his employment pay would have to be addressed with the correctional officer, who handles his employment. Mr. Marocco also indicates in his memo to the complainant that he has conferred with Inmate Accounts to review the charges questioned by complainant and it was determined that he was exempt from a co-pay for four dates of service, and therefore thirty dollars in transactions would be voided.

See attached copies of all correspondence in possession concerning the above-referenced correspondence between complainant and Mr. Marocco.

4. You submitted a document to us in the form a spreadsheet showing the complainant's account involving (furlough fees), etc. Is this a report generated directly from a request to your computer system, or did the list have to be created manually. Please explain the process.

RESPONSE: A staff member from the Department's Inmate Accounts office reviewed complainant's ledger (a listing of all entries made concerning deposits and withdrawals), identified all entries entitled "Furlough Fees" (denoting that complainant left the ACI for a medical visit). Inmate Accounts can retrieve information concerning each furlough fee entry by looking in a description window. When complainant was initially charged for co-pays which were alternately voided on a spreadsheet (furlough dates 9/5/06, 9/27/06, 10/6/06, 10/30/06) said entries were initially made in error because there was an inadequate description provided to Inmate Accounts, which would clearly demonstrate that an exemption to the co-pay was warranted. The spreadsheet that was submitted to this Commission was generated manually via the process stated above.

5. Obviously, since the disputed fees were voided, they must have been charged in error. Please explain the issue or misunderstanding which caused the charges to occur. Who was responsible for the error? How was it caught?

RESPONSE: See Response to No. 4.

6. When and how was Mr. Waite made aware that his account had been corrected. Is this documented?

RESPONSE:

Respectfully submitted,

______________________

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920
Bar No.

CERTIFICATION

The undersigned hereby certifies that on this, the day of February, 2008, I mailed a true copy of the within -------------- to Raymond Waite, P. O. Box 8274, Cranston, R. I. 02920.

______________________________